Trustees of the Greene Foundation *v.* City of Boston.

TRUSTEES OF THE GREENE FOUNDATION *vs.* CITY OF BOSTON.

Taxes upon the property held in trust by the " Trustees of the Greene Foundation," a corporation chartered February 12, 1824, are properly assessed in Boston, to the corporation in its corporate name, and should not be assessed to the assistant minister for the time being of Trinity Church, Boston, although he is entitled to the whole net annual income of said property.

ASSUMPSIT to recover back a tax assessed in the year 1850 upon personal property owned by the plaintiffs; the question

in controversy being whether said property was properly taxable to the plaintiff corporation in Boston, or to Rev. Thomas M. Clark, then assistant minister of Trinity Church, Boston, who resided in Brookline. It was submitted to the court of common pleas, upon an agreed statement of facts, which sufficiently appear in the opinion. From a judgment in favor of the defendants, the plaintiffs appealed to this court.

*W. H. Gardiner*, for the plaintiffs. 1. The plaintiffs hold the fund, which was taxed as a private corporation, created for that purpose; and, though composed of members *ex officio*, who are the elected officers of a religious society, the said corporation is not, itself, a religious society, nor taxable as such for property holden as a ministerial fund. Rev. Sts. *c.* 7, § 10: Eighthly. *St.* 1823, *c.* 102; *St.* 1824, *c.* 22; *St.* 1830, *c.* 83; Rev. Sts. *c.* 20.

2. By the terms of the original donation, and the tenor of their act of incorporation, the plaintiffs are mere trustees, bound to pay over the whole income of the trust-fund to the individual who shall answer the description of the *cestui que trust* or beneficiary. Instrument of Donation, Pamph. App. A.; *St.* 1823, *c.* 102, § 3; Province Laws, *c.* 259, §§ 1, 3; Anc. Ch. 605.

3. At the time of the assessment of the tax in question, the person entitled to the income of the fund being an inhabitant of Brookline, and the property in question being personal estate, the same was not taxable in the city of Boston. Rev. Sts. *c.* 7, § 10: Fifthly. *Bates* v. *City of Boston,* 5 Cush. 98; *Gloucester* v. *Gloucester,* 19 Pick. 542; *St.* 1823, *c.* 143, § 2.

*P. W. Chandler*, (city-solicitor,) for the defendants.

SHAW, C. J. We are here called upon to consider another tax case. It is brought by a special corporation entitled the " Trustees of the Greene Foundation," to recover the amount of a tax paid. I have not said assessed to said corporation, in terms, because, in looking at the tax-bill, it was in form assessed to Amos Cotting, treasurer of the Greene Foundation. But the receipt of the city treasurer, which seems to have been carefully prepared, purports to be a receipt of the

amount of the tax-bill, from " the Trustees of the Greene Foundation," who deny their liability to this tax, and make this payment by compulsion, with a protest against its legality. It is probable that this was done at the instance of the trustees, in order that they might have full evidence that they made the payment, in order to have this plain remedy to recover it back, as money had and received of them, if they were not liable. The only question raised, therefore, is, whether they were thus liable.

But suppose, in point of form, it should have been assessed to the trustees in their corporate name, the difference would be but a mistake of name, which would not exonerate the person intended to be taxed, if such person is liable. Rev. Sts. *c.* 8, § 5. " If in the assessor's lists, &c. there should be any error in the name of any person taxed, the tax may, notwithstanding, be collected of the person intended to be taxed, provided he is taxable and can be identified by the assessors."

This provision has received a construction, and been held to extend to and correct all errors of mere misnomer, made by the assessors in their lists, or in the collector's warrant. *Tyler* v. *Hardwick*, 6 Met. 470.

The only real question in this case is, whether this corporation is liable to taxation. This corporation was established by an act of incorporation, passed February 12, 1824, and slightly amended by an act passed in June, 1824. It incorporated " the minister, wardens, and vestry of Trinity Church," for the time being, by the name of the Trustees of the Greene Foundation. It recites a gift made fifty years previous by the heirs of Thomas Greene, of £500 sterling, with the like sum subscribed by individual members of the parish. These sums, with additions for the same purposes, and with the accumulations, when not actually appropriated, were declared to constitute a perpetual fund for supporting a clergyman of the Church of England, who is to be employed as a constant assistant to the incumbent or stated minister, &c., with some exceptions not material. This fund was held many years without corporate powers, and administered by the minister, wardens, and vestry, and the act of incorporation seems to have been intended to give a legal sanction to the

Trustees of the Greene Foundation *v.* City of Boston.

proceedings, without altering the purposes of the donation, or the mode of administering it. It invests the regular officers of the society with corporate powers; and as the parish or religious society has the power of electing these officers, they have the power as incident thereto, to determine who shall compose this corporation.

The general purpose is, from the income, to support and maintain an assistant minister for the celebration of public worship, which is strictly a parochial purpose; the ultimate benefit is a benefit to the parish. It was urged in the argument, that this fund was held upon trust, to pay the whole income to the assistant minister for the time being, and that at the time this tax was assessed, the assistant minister lived in Brookline, and that he was *cestui que trust,* and ought to pay the tax.

If the income was so payable to Mr. Clarke, the assistant minister at that time, it must have been in consequence of an agreement made between him and the society, to receive said income as part of his regular stipend. There is nothing in the original instrument, or in the act of incorporation, which establishes such trust, or makes the assistant minister for the time being *cestui que trust,* independently of the agreement under which he is so settled as assistant minister. The original instrument of donation makes it a perpetual fund, as before stated, for supporting, &c., and towards the close is this clause, " as to the particular mode of improving the aforesaid donation in the best manner, for answering the design of it, we submit it to the present minister, wardens, and vestry to form such rules, &c. for managing the same, and rendering it effective and permanent."

Possibly it may be argued that the term " improving " may be used in a restricted sense, and confined to investing, increasing, and bettering the fund. But we are inclined to believe that the term, as used at that period, was used in a larger sense, as, to use, occupy, and appropriate, limiting it, if used in that sense in the present case, to the means; the end being designated with sufficient precision. But if used in the sense only of investing and safely preserving the fund, there is no des-

ignation of any mode, in which the income is to be applied, to advance the object contemplated, but it is left to the trustees to adopt such means as they may see convenient and necessary, for managing the same and rendering it effectual and permanent. That the trustees did not feel themselves charged with a special trust, to pay the annual income to any assistant minister, is manifest from the fact that during considerable periods they had no assistant minister, and for one period of twenty years next before the incorporation, from 1804, when Dr. Gardiner ceased to be assistant and became rector, there was no assistant, and the interest was annually added to the principal. Nor is there anything in the act of incorporation which makes them trustees for any assistant minister personally. The act, after reciting that a fund had been given in trust, as a fund for the support of an assistant minister, and the minister, wardens, and vestry had petitioned to be incorporated as trustees for the due management of said fund, and vest them with the powers necessary to carry into effect the pious purpose of the donors, then proceeds to incorporate them with the usual powers. They are authorized to choose a president, clerk, and treasurer. Among other powers, they are specially authorized to add the annual interest to the principal, and place the whole at interest.

These circumstances distinguish the case from those in which property is given in special trust to pay the income to any person in particular, or to the life of any person, or to accumulate for any particular person designated, in which cases the *cestui que trust* is made taxable. It has all the characteristics of a ministerial fund in the ordinary sense of that word. Treating this corporation as one established to hold and apply a fund for the support of a minister in an Episcopal Society, is such fund in the hands of such corporation by law liable to taxation ?

It was intimated in the argument, that this fund is specially exempted by law as the property of a charitable institution. If this were a new and original question, depending only on the nature of the institution, there would be much plausibility, not to say force, in the argument. But the revised statutes

expressly recognize the liability of a ministerial fund to taxation, and merely regulate the mode, when it is held in a particular way. The liability of auxiliary corporations, who are created for the express purpose of holding such fund and paying the income to the use of a religious society, towards the support of public worship, is declared and adjudged. And we understand that such has been the universal understanding, both before and since the passage of the revised statutes. It is too late now to hold that a corporation, established to manage and apply a fund towards the support of a minister, either by paying the same directly, in whole or in part to the minister, or to the treasurer of the parish, or otherwise to the use of the parish and for their relief and benefit, is a charitable institution.

This being established, the liability we think results from the express provisions of the tax acts. The Rev. Sts. *c.* 7, § 2, eclares that all property, real or personal, of the inhabitants of this state, not expressly exempted by law, shall be subject to taxation, in the manner therein provided. This declares the broad principle of liability and the limited exception " expressly exempted by law." Section nine declares that all personal property, whether within or without this commonwealth, shall, except in the cases enumerated in the following section, be assessed to the owner in the town where he shall be an inhabitant. " It shall be assessed to the owner." An owner of property may be a corporation as well as an individual. By the statute the word " person " shall be deemed to include " corporation." Rev. Sts. *c.* 2, § 6. An owner is *a person* who owns. Taken in connection with the rule that all personal property shall be subject to taxation, and that much personal property belongs to corporations which do not come within the specific cases enumerated, the term " owner " extends to many corporations. Besides ; under these specific enumerated exceptions, when the property is not to be assessed to the legal owner, are several cases of corporations, to wit : Sect. 10. Secondly. Machinery belonging to any corporation. Sixthly. Personal property placed in the hands of any corporation, as an accumulating fund. The exceptions prove

the rule; of course, when those exceptions do not apply, the property is to be assessed to the owners, though a corporation Then the difficulty suggested is, where is such corporation an "inhabitant?" In most acts of incorporation, it has a location fixed by law; in many others, it is local in its nature; as towns, counties, school districts, common fields and the like; and in all others, by a place of meeting or of business. Here it is local in its nature by consisting of parish officers and by being inseparably connected with a parish, which is local. The eighth clause of the tenth section of the seventh chapter, provides that "all property held by any religious society, as a ministerial fund, shall be assessed to the treasurer of such society; and if such property consists of real estate, it shall be taxed in the town where such property lies; and if it consists of personal property, it shall be taxed in the town where such society usually hold their meetings." This provision clearly declares the principle that a ministerial fund is taxable. And if the present is not a case literally within the eighth exception, when the tax is to be assessed to the treasurer, as it was argued that they were not, because the property was not held by the society, but by a distinct corporation, for their use, then the case falls under the general rule; and the corporation, not being exempted by law from taxation, are liable to be assessed for the property in their own corporate capacity. Whether the case is within this clause, if the decision depended on it, would perhaps be a nice and difficult question. If the word "held" means the legal vested interest, probably it could not be said to be held by the parish, or pew-holders, or religious society; yet it is manifestly held for their benefit. The original donation was thankfully accepted by the pew-holders constituting the religious society, and the property was placed in the hands of their officers; and for some purposes, therefore, it might be well maintained that the property was held by the society. But according to modern views, it might be perhaps more technically regular, to consider the legal estate as vested in the "minister, wardens, and vestry," originally as special trustees, and under the act of incorporation, in the trustees in their

corporate capacity; in either case, the parish, the religious society worshipping in Trinity Church, however constituted, being the *cestui que trusts* and beneficiaries.

But as the question is one of mere formality in the mode of assessing, and in either case the tax must constitute a charge on the fund, we have not thought it necessary to go at large into this question. The only question raised by the exceptions and protest of the trustees was, that the fund in their hands was not taxable to them.

It is hardly necessary to strengthen this conclusion, and yet it may add some weight to it, to say that this fund, being clearly a ministerial fund liable to taxation, held either by the religious society or a special corporation, call it a financial corporation or otherwise, to manage and apply a ministerial fund, it was the duty of the one or the other to give in a statement of it to the assessors, as required by law; and not having done so, but denying all liability and standing aloof, errors in the mere mode of proceeding by the assessors, after using their best judgment, are more excusable than they otherwise would be. Had a list been given in, either by the society or the trustees, we have no reason to doubt that the assessors would have made their assessment accordingly, and no question as to the mere mode of assessment would have arisen.

*Judgment for the defendants.*